## JOHN F. BAASEN, Appellant,

*vs.*

## HERMAN BAEHR, Impleaded with others, Appellees.

APPEAL FROM MILWAUKEE CIRCUIT COURT.

A contracted to build a house for B at a stipulated price, and B was to pay for extra work, at the estimate of an architect agreed upon. A cannot recover for such extra work, until the architect shall have estimated for the same.

Where parties to a contract agreed to rely upon the judgment and skill of an architect, in ascertaining the value of extra work, they must abide by his estimate or impeach it upon the ground of fraud, mistake, or some other good cause.

An averment that the estimate is *erroneous and too low,* is not sufficient to show fraud, bad faith or mistake, on the part of the architect, in making the estimate ; nor is such an averment sufficient to sustain an action to recover for extra work above the amount estimated.

A agreed to build a house for B by a specified day, or forfeit $500 as liquidated damages. In an action to impose this forfeiture, it is competent for A, to prove, that in consequence of his being required to do extra work, he could not complete the contract at the time specified.

This was a complaint under the code of practice, showing that the defendant Baehr, agreed to erect a brick building for the plaintiff, according to certain plans and specifications furnished by John Dillenburg, the architect, for the sum of $4,350 ; and to complete the same on the 1st of April, 1857 ; and in case of default to complete, at the time, the sum of $500 was to be deducted as liquidated damages. The plaintiff was to pay 85 per cent. of the work as it advanced, and on the completion to pay the whole amount ; *also to pay for all extra work and additions,* and the defendant to make deductions from any change of the plan, according to the estimate of the architect agreed upon by the parties. The com-

plaint averred that the building was not completed at the time agreed upon; also that the work was not done well and of good materials, and claimed damages for the last of $1000, and the $500 agreed to be forfeited. It also set forth that *the extra work done by the defendant had been estimated, by the architect, at* $300. The complaint also averred sundry payments made to Baehr and his workmen, sub-contractors, and material men, amounting to the whole sum due on the contract; and prayed an accounting between the plaintiff and the several defendants who had commenced actions against the plaintiff under the mechanic's lien act.

The defendant Baehr answered the complaint and confessed the making of the contract to build, as set forth in the complaint, and that Dillenburg was the architect to furnish plans, &c., and to estimate the work as it progressed. It also admitted the commencement of suits against the plaintiff by the mechanics, material men and sub-contractors; but denied knowledge of payments made to them by the plaintiff.

The answer then set forth as a counter claim, that he laid the foundation of the building according to Dillenburg's plan, till the walls were seven feet high; when the plan was changed by making the building $2\frac{1}{2}$ feet longer, which required the taking down of fourteen feet of the rear wall, and rebuilding it, which he valued at $300. The plan was further altered from a cellar to a kitchen, and he had to put an additional wall across the building, and make openings for four doors and seven windows, and make the doors and windows, also to make wooden partitions between the rooms in the basement, and make floors, and do a great deal of extra work, for which he claimed $1,147 50. It also claimed that by reason of the extra work thus done by him, he was unable to complete the work at the time agreed upon, but that he did complete it within a reasonable time afterwards, and so he denied the forfeiture of the $500. It also claimed that the

work was well done, with good materials and according to the directions of Dillenburg. It also claimed that *the estimates of Dillenburg for the extra work was erroneous and too low, and should be rejected for that reason;* and concluded by claiming $4,350, as the amount due to the defendant.

To this answer the appellant filed the following demurrer: . "The plaintiff demurs to the counter-claims set up in the answer of the defendant Baehr, on the ground that said counter-claims do not, nor does any one of them, state facts sufficient to constitute a cause of counter-claim or defence."

This demurrer was argued and submitted to the circuit court, and there overruled, and the following decision and order made:

" The demurrer must be overruled. The portion of the answer to which the demurrer is applied, shows that large additions were ordered and made to the building, beyond what was required by the plan and specifications upon which the contract was founded ; and the defendant Baehr claims several large sums as the value of such extra work, and he also alleges that these additions and alterations from the original plan rendered it impossible for him to perform the contract within the time specified, but that he did complete the entire building within a reasonable time. This defence, I think, is properly stated, and if proved on the trial will defeat the plaintiff's claim to recover liquidated damages for the non-performance of the contract at the time fixed therein."

From this order overruling the demurrer, the plaintiff appealed to this court.

*Smith & Solomon,* for the appellant.

The demurrer relates only to the counter claim, set up in the answer arising for extra work. This is inconsistent with the original contract, as set forth and confessed by the defendant. The architect was to estimate and determine the price

at which the plaintiff was to pay for that extra work. He was made the sole judge and arbiter between the parties on these points, and his determination is conclusive unless impeached for fraud. 2 Story's Eq. Jur., 1456 ; Bac. Ab. Arbitrament and award, K.

The estimate of this extra-work is mainly a matter of judgment, the judge chosen by the parties has given his decision, his judgment ought to be, what it was intended to be, binding between the parties.

Again, the estimate of the architect of the value of the extra work was a condition precedent to the respondent's right of recovery for it. Without such estimate the respondent could not recover anything for the extra work. Shall he now be allowed to treat it simply as a nullity ? See Chitty on Contracts p. 571, (495); *Robinson vs. Fiske,* 12 Shep. 401; *Glenn vs. Leith,* 22 Eng. Law and Eq. R., 489; *Grafton vs. The Eastern Counties Railway Co.,* 22 Eng. Law and Eq. R. 557; *Brown vs. Bellows,* 4 Pick., 179 ; *Chapman vs. City of Lowell,* 4 Cush., 378 ; *Founce vs. Burke,* 4 Harris, 469; *Mc Avoy vs. Long,* 13 Ill., 147.


*By the Court,* SMITH, J. We think the demurrer was well taken to those portions of the answer to which it applied. The appellant, in his complaint, among other things, states in substance that he was to pay for the completion of the building, according to the specifications and contract, the sum of four thousand three hundred and fifty dollars, " with such additions for extra work, or deductions from any change in the plans as provided in the specifications, as might be made on the estimate of the architect," &c., and that the architect agreed upon by the parties, estimated the extra work done at three hundred dollars.

The respondent in his answer admits the making of the

contract substantially as set forth in the complaint, and that Dillenburg was the architect agreed upon to furnish the plans and make the estimates ; and then by way of counter-claim, (as we understand it,) insists that after laying the foundation and commencement of the work, certain material changes were made in the plan of the building, which imposed upon him a great deal of additional labor and expense, and claims that he performed extra work, not embraced in the first plan, to the amount of eleven hundred and forty-seven dollars and fifty-one cents, which sum should be added to the contract price for putting up the house.

It is contended, and as we think, with much reason, that this counter-claim is inconsistent with the original contract, as set forth in the complaint, and admitted by the answer; and that the facts set up in this part of the answer, even if true, do not constitute and form a proper subject of a counter-claim. It is said by the contract that the appellant agreed to pay the respondent on the final completion of the building the balance of the original contract price, then unpaid, with such addition thereto for extra work, or deductions therefrom on account of changes in the plan, as the architect agreed upon by the parties might allow by his estimate ; and that the allegation in the complaint that the architect estimated the extra work done on the building at the sum of one hundred and thirty-four dollars and forty-seven cents, stands uncontradicted and confessed by the answer. From a careful consideration of the terms of the contract, as disclosed in the complaint, it is apparent that the parties stipulated and agreed to rely upon the judgment and skill of the architect in ascertaining the value of the extra work done upon the house, and we think the respondent must abide by the estimate of the architect, or impeach it upon the ground of fraud, mistake, undue influence, or some other good cause. He has not attempted to do anything of the kind. It is true, in another

clause of the answer, it is stated that the estimate of the architect, of the value of the extra work on the rear of the building was erroneous, and too low, and should be rejected for that reason. The allegation is not sufficient to show fraud, bad faith, or a mistake on the part of the architect, in making his estimate. The parties saw fit to make the architect the umpire between them, and if he exercised his best judgment, in good faith, and with an honest intention of determining the real value of the extra work, his estimates are binding upon them. His decision ought not to be disturbed without some statement going to show that it was made under a mistake, or was not honest. Clauses in contracts analagous in principle to the one now under consideration, have frequently been construed by courts, and the general rule is to hold the parties to the stipulations of their contract, unless they show some good reason for disregarding the decision made by the umpire mutually chosen for that purpose. *Easton vs. The Pennsylvania & Ohio Canal Company,* 13 Ohio R., 81 ; *Mansfield & Sandusky R. R. Company, vs. Veeder & Co.,* 17 do., 385 ; *Canal Trustees vs. Lynch,* 5 Gil., 521 ; *Ennis vs. O' Connor,* 3 Ham. & John 163 ; *Monongahela Navigation Company vs. Fenton,* 4 Watts & S., 205 : *Fanniee vs. Burke & Gordon,* 16 Penn. R., 469 ; *Butler vs. Tucker,* 24 Wend. R., 446 ; *Smith vs. Briggs,* 3 Denio, 73 ; *Merrill vs. Gore,* 29 M. R., 346 ; *Parks vs. The Great Western Railway Co.,* 3 Eng. Rail & Canal Co's., 17. If the architect had made a mistake, the respondent should have shown in his answer how the mistake occurred, or in some way impeached the estimate, by alleging that the architect did not exercise a fair and sound judgment in making it, or was actuated by some fraudulent or improper motive. Not doing this, we think the respondent's counter-claim for extra work cannot be sustained. It was stated on the argument by the counsel for the appellant, that it was not intended that the demurrer should be

applied to that part of the answer relating to the defence for the stipulated damages. It was conceded that if the demurrer should be sustained, the latter part of the answer would remain, and that under that part the respondent could introduce proof to show that in consequence of the extra work required to be done, the house was not completed at the time specified. It seems to have been upon this ground that the circuit court overruled the demurrer.

The order of the circuit court overruling the demurrer must be reversed, and the cause remanded for further proceedings.