BOARD OF EDUCATION OF THE CITY OF PAOLA V. F. M. SHAW, et al.

1. CONTRACT; PERFORMANCE; *Decision of Umpire Conclusive, unless Impeached for Fraud, or Mistake.* In an action against the sureties on a penal bond, given to secure the fulfillment of a building contract, it was shown that, according to the contract, the contractor was to build a certain school-house for his employers, the board of education of the city of Paola, in accordance with certain plans and specifications furnished and to be furnished by the architect, who was the duly-authorized agent of said board and appointed by them, and said school-house was to be built under the direction and to the satisfaction of said architect, who had power to make such changes and alterations in any of the plans and specifications as he might choose. The contractor constructed said building in accordance with the instructions of the architect, and to his satisfaction, and at the time of the final estimate by the architect he received a final certificate from the architect certifying to the final and proper completion of the building. The board of education then took possession of said building—receiving the keys thereto from the contractor—and they still remain in possession thereof. The building however was not con-

structed in accordance with the original plans and specifications; and the building constructed was worth about $15,000 less than the one which the original plans and specifications called for: *held*, that these facts do not constitute a cause of action in favor of the board of education and against the sureties on said bond.

2. —— Where the parties to a building contract agree upon an architect, and stipulate and agree to rely upon his judgment, skill, and decision as to the character, amount and value of work to be done, they must abide by his judgment and decision, or impeach it upon the ground of. fraud, mistake, undue influence, or some other good cause.

3. PLEADING; *Reply to be Deemed Controverted.* Allegations in a reply of the plaintiff are, under our system of pleading, to be deemed controverted by the defendant without any formal denial of the same on the part of the defendant.

4. —— *Construction of Contract.* Allegations in a pleading denying the legal import of a written contract (a copy of which written contract is given in the pleadings, and admitted to be correct by both parties,) will not be considered by the court.

5. —— *Contradictory Averments.* On the trial of a case, the whole of the pleadings are considered together; and where any two allegations of the same party are inconsistent with each other, the allegation most unfavorable to such party will be deemed to override the other allegation.

## Error from Miami District Court.

ACTION by the *Board of Education of the City of Paola*, as plaintiff, against L. E. Post, *F. M. Shaw*, A. A. Smith, *J. B. Hobson, W. G. Rainey, H. Pardee*, and *C. A. Leighton*, as defendants, to recover the sum of $70,000 as liquidated damages, and being the penal sum named in a certain bond executed and delivered by the defendants to the plaintiff to secure the faithful performance of a contract made and entered into between the plaintiffs and said Post as principal, with the other defendants as his sureties. All the facts are stated in the opinion, *infra*. Trial at the September Term 1873 of the district court, J.B.S., judge *pro tem.*, presiding. Demurrer to plaintiff's evidence sustained, petition dismissed, and judgment for defendants for costs. Plaintiff brings the case here on error.

*B. F. Simpson,* for plaintiff in error:

Action on a building contract against the contractor and his sureties, on his bond for a faithful performance. The essential conditions of the contract are, the "contractor shall well and substantially, and in the best and most workmanlike manner, with the best material of their respective kinds, and under the direction of the architect, make, execute, finish and complete and deliver to the proprietors," the school-house mentioned in the contract. Allegations of breaches are, "that said Post did not or has not constructed said school-house throughout in the best workmanlike manner, with the best quality of new materials of their respective kinds, or in a thorough, substantial and workmanlike style, and in accordance with the plans, and specifications, and drawings; that the material furnished by said Post, in the construction of said school-house, was not the best in quality that could be procured for the purpose, but on the contrary, was of inferior quality," specifying particularly the inferior work and material. These provisions are distinct and independent, and a failure to perform one gives the cause of action. It is not necessary that the default or omission shall extend to and embrace all of the separate, distinct and independent provisions. The labor of construction may have been performed in the best and most workmanlike manner, and yet the material furnished be very bad; and will it be claimed that no cause of action arises on account of the defects in material? See on this point the case of *Glacius v. Black,* 50 N. Y., 145. There may have been bad workmanship and worse material, and yet all done under the direction and with the acceptance of the architect, and even then a cause of action accruing to the plaintiff. Where a contract is entered into with specifications for the erection of a building, the contractor must perform in every *essential particular,* unless performance is waived: 22 Ill., 446; 3 Iowa, 209; 30 Georgia, 1; 20 Penn. St., 130; 9 Wallace, 161, 254; 36 Maine, 201; 16 Ohio, 238.

Again, it was alleged by way of reply to the answer of de-

fendants, claiming an acceptance of the building by the archi-
tect, that the acceptance was a fraudulent one, and not binding
on plaintiff; and this is in accordance with the books, as see
8 Florida, 413; 22 Ill., 53; 11 Shepherd, 214; 14 Grattan,
447, 473; 17 Ohio, 385.

*W. R. Wagstaff*, and *T. M. Carroll*, for defendants:

When a building contract provides that the last installment
shall be paid by the proprietors when all the work is com-
pletely finished, and certified to that effect by the architect
under whose direction the work was to be done, production
of the certificate of the architect is conclusive upon the pro-
prietors, unless obtained through fraud or mistake: 44 N. Y.,
143; 17 N. Y., 173; 24 Wend., 445; 22 Ill., 53.

If the parties to an executory contract make a provision in
it, that any dispute that may arise between them on the sub-
ject of the contract shall be determined by an individual
named whose decision shall be final, no action will lie for a
breach of the agreement by one against the other; but they
must resort to the tribunal appointed by themselves, from
whose award there is no appeal. If parties by contract ap-
point an arbiter to settle their differences, they are bound by
his award, although he may be interested in the contract
which was the subject of difference: 4 W. & S., 205; 5 Am.
Law Register, N.S., 280; 50 N. Y., 250; 48 Penn. St., 161;
13 Ohio, 79; 24 Wend., 445. And fraud and collusion must
be affirmatively shown: 4 Kas., 354; 1 Greenl. Ev., § 80;
3 Greenl. Ev., § 254. The mistake on the part of the archi-
tect, to be available, must be one which should clearly show
that he was misled, deluded, and so far misapprehended the
facts that he did not exercise his real judgment in the case:
52 Ill., 53. The case of *Glacius v. Black*, 50 N. Y., 145, the
authority relied on by the plaintiff, differs from the case at
bar so widely in its facts as to have no bearing on the ques-
tion here. In this case the architect is made the arbitrator
between the contractors, and the character and amount of the
work to be done are made subject to any modification the

architect may direct. The contractor is made subject to the direction and instruction of the architect, regardless of plans and specifications. It seems plain that the contractor was bound to do the work as the architect should direct, and seems equally clear, to make the defendants answerable in damages, a breach on the part of the contractor, in failing to build as directed by the architect, should be shown. This was not done. The plaintiffs did not aver fraud in their petition, and offered no proof of fraud on the trial.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a penal bond given to secure the fulfillment of a building contract. The action was commenced against L. E. Post as principal, and F. M. Shaw, A. A. Smith, J. B. Hobson, W. G. Rainey, H. Pardee, and C. A. Leighton, as sureties. But as no service of summons was ever made on Post or Smith, and as neither of them ever appeared in the case the action was prosecuted in the court below against the other defendants alone. The following facts are admitted by the pleadings: The bond and contract above mentioned were duly executed by the respective parties. The contract contained an agreement on the part of Post to build a school-house for the plaintiffs below,

1. Contract; performance. Architect to determine.

(The Board of Education of the City of Paola, a city of the second class.) The house was to be built according to certain plans and specifications, and under the direction of one A. J. Kelley, an architect, who was the duly-authorized agent of the said board of education, and appointed by them. Said Kelley had power under the contract to make additional plans and specifications, and to make such alterations and changes in any of the plans and specifications as he might choose. Post was to receive as compensation for building said house the sum of $35,000, to be paid in monthly installments as the work progressed, the work and the amount to be paid to be estimated by the architect, but in no case was he to receive (until after the building was finally completed,) more than eighty per cent. of the

amount due on any estimate of the architect; and he was to receive full payment within thirty days after the final completion and acceptance of the building. Where alterations were made from the original plans and specifications, Post was to receive more or less than the contract-price, in proportion as the alterations involved a greater or less expense. Post constructed the building in accordance with the instructions of the architect, and to his satisfaction, and at the time of the final estimate by the architect he received a final certificate from the architect, certifying to the final and proper completion of the building. Post received from the board of education eighty per cent. of said $35,000, to-wit, $28,000; and $7,000 thereof still remains unpaid. The board of education then took possession of said building, receiving the keys thereto from Post, and they still remain in possession thereof. We quote the following portions of the contract as indicating the power of the architect in the premises:

"In the construction of these presents, when the contract will admit of it, the term contractor, shall mean the said L. E. Post; the term proprietors, shall mean the said Board of Education, for and on behalf of the said school district; the term architect, shall mean A. J. Kelley, *employed by the proprietors* to superintend the erection and completion of the works; and the term works, shall mean all the works, matters and things specified and described in the specifications, plans and other drawings as furnished *from time to time* by the architect, and also such other works, matters, and things as are hereby contracted to be done and performed by the contractor." "The contractor shall," "under the direction of the architect, make, execute, finish, and complete" "the several works, matters, and things, and acts mentioned and referred to in the specifications, plans, and drawings furnished *and to be furnished* by the architect, with such additions *enlargements and alterations of and deviations from* said plans and specifications (if any) as the architect may *from time to time during the progress of the work direct.*" "The proprietors shall pay the contractor for the full and perfect completion of this contract the sum of $35,000 in lawful currency of the United States; but if the architect shall direct any additions to, or *omissions* of, or *variations* from

the plans and specifications, the value of such additions, *omissions or variations* shall be added to or *deducted* from the said sum of $35,000, as the same may be. The payments to be eighty per centum of the works according to the architect's *estimate*, and his *certificate.*"

These are probably sufficient specimens to show the nature and extent of the power of the architect in the premises. They really show that the architect had all the power that the board of education itself had. He could make such alterations and changes as he chose. The contractor had but little if any choice in the matter. He was required to construct the building, just as directed by the architect, and if he did so, and to the satisfaction of the architect, he fulfilled his contract. The pleadings admit that the building was constructed to the satisfaction of the architect, and therefore it would seem that judgment might have been rendered for defendants on the pleadings. It is claimed however that the building was not constructed in accordance with the original plans and specifications. This was not necessary. The con-

2. Decision of umpire—when conclusive.

tract itself made the subsequent directions of the architect paramount to the original plans and specifications. Where the subsequent directions of the architect differed from the original plans and specifications, the contractor was bound by his contract to follow the subsequent directions of the architect, and to abandon to that extent the original plans and specifications. The original plans and specifications served merely as general guides to work by, where no subsequent directions were given; and served in all cases as criterions of the value of the work done. If the flooring used was worth $10 per thousand feet less than that which the original plans and specifications called for, then $10 for each and every thousand feet of flooring used should have been deducted from the contract-price of the building. If the steps used were worth $920 less than those which the original plans and specifications called for, then $920 should have been deducted for the steps. If the whole house was worth $15,000 less than that which the original plans and

specifications called for, then $15,000 should have been deducted from the contract-price for the house, and the plaintiffs should have paid only $20,000 for the house instead of $28,000, as they in fact did pay. The fact however that the plaintiffs paid the contractor $8,000 more than the house was really worth, does not make these defendants liable. They did not enter into bond that the contractor should not receive $8,000, or any other sum, more than he was entitled to receive under the contract. They simply entered into bond that he would fulfill his contract, and if he did that, (and the pleadings in effect admit he did,) then the condition of their bond was fulfilled; and what the contractor received or did not receive for his work, is merely a question between the contractor and the plaintiffs. If the architect, the agent of the board of education, made unwise changes and alterations in the plans and specifications for the building, and if the board unwisely paid more than the building was worth, that was their own misfortune. The sureties on the bond (the defendants) did not agree that the architect and board should always act wisely. That it may be seen what these defendants did in fact agree to, we here quote the condition of their bond in full. It reads as follows:

"If the above bounden L. E. Post shall well and truly comply with and perform each and every condition, requirement, and obligation of said contract in writing, as it now is or may be hereafter *changed or modified,* then the above obligation to be void, otherwise of full force and effect in law."

But it is alleged in the reply of the plaintiffs that the acts of the architect in accepting said building, in approving the work done thereon, and in issuing said final cer-- tificate, was *fraudulent.* And it is also alleged in said reply that said acts of the architect were performed through a mistake, the architect believing at the time that the building was in fact completed in all respects in accordance with the original plans and specifications. And it is also alleged in said reply that when said board received said building from Post, that they did not receive it as a finished

3. Reply to be deemed controverted.

or completed building, but received it only for what it was worth. These allegations in the reply are, under our system of pleading, to be deemed controverted by the defendants without any formal denial of the same on their part. (Civil code, §§ 86, 128.) These are about the only contested allegations in the pleadings. And evidence can of course be introduced only to prove contested allegations. (*Reed v. Arnold*, 10 Kas., 104.)

We shall take no notice of such allegations in the pleadings as deny the legal import of the contract sued on, for such allegations in legal effect amount to nothing. The contract
4. Written contracts. Pleadings. is in writing, set forth in full in the plaintiffs' petition, not denied by the defendants, and it must speak for itself. Neither shall we take any notice of any allegation in any pleading where other allegations made in a pleading by the same party shows that said first-mentioned allegation is untrue, for on the trial of a case the whole of the pleadings are considered together, and where any two allegations of the same party are inconsistent with each other, the allegation most unfavorable to such party is deemed to override the other allegation. (*Butler v. Kaulback*, 8 Kas., 668, 671.) The evidence introduced on the trial shows that the building was not constructed in accordance with the original plans and specifications, and that the building constructed was worth about $15,000 less than the one which the original plans and specifications called for. This evidence, as we have already seen, was, under the pleadings in the case, and in the absence of any showing of fraud or mistake on the part of the contractor and the architect, wholly immaterial. In just what the supposed fraud or mistake consisted, we are not informed. No details of fraud or mistake are given. But even if the pleadings had been amply sufficient upon this subject, still the evidence failed to show such fraud or mistake as would authorize an action. (In this connection see the case of *Baasen v. Baehr*, 7 Wis., 516.) There was not the least showing of fraud by the evidence, and the only mistakes made were in supposing that

4—15 KAS.

the materials, the work, and the building were worth more than they really were. But as we have already said, the sureties on the bond did not agree that no mistakes of this kind should occur. They substantially agreed that the contractor should construct the building to the satisfaction of the architect, and nothing more; and in this respect their contract was fulfilled. But in any case it would probably be difficult to imagine such a mistake on the part of the architect or the board of education as would give the board of education a cause of action against the sureties on said bond. But what chance had the architect to make such mistakes as would affect injuriously the board of education? The board appointed a building committee from their own number to watch the architect, to watch the contractor, and to watch the work as it progressed. This committee was cognizant at all times of the manner in which the building was being constructed; and although they made *no written report* concerning the matter, yet they made verbal reports to the board, and it must therefore be presumed that the board was cognizant at all times of the manner in which the building was being constructed. Yet the board took no action in the matter except to continue to pay the contractor the eighty per cent. on the architect's estimates. Under such circumstances it must be presumed that the changes that were made in the plans and specifications, or in the work done, were made by the consent of all the parties, and perhaps at the instance of the board itself; and under such circumstances the board should have paid the contractor just what the work on the building was worth, taking the original contract-price of the building as the proper criterion of the value thereof. Taking the pleadings and the evidence altogether, no cause of action was shown in favor of the plaintiffs and against the defendants. That is, take the undisputed facts, as admitted by the pleadings, and the controverted facts as proved by the evidence, and all together do not constitute a cause of action against these defendants, the sureties on the contractor's bond. Upon the facts thus admitted and thus proved, the judgment

should have been for the defendants. After the plaintiffs had introduced all their evidence, the defendants demurred to the evidence. The court below sustained the demurrer, dismissed the plaintiffs' action, and rendered judgment for costs in favor of the defendants and against the plaintiffs. We perceive no error in this. The judgment of the court below will therefore be affirmed.

All the Justices concurring.