# CASES DETERMINED

## January Term, 1885.

---

MULLEN vs. MULLEN and another.

*October 17, 1884 — January 13, 1885.*

*Estates of decedents: Wills: Appraisal when conclusive.*

A will directed that certain land "shall go to and belong to my son J. M. upon his paying to my sons T. and C. an amount equal to one third interest therein based upon the appraised value thereof as made by the appraisers of my estate." *Held*, that the valuation of said land by the regularly appointed appraisers of the estate, if made in good faith and according to their honest judgment, is final, and cannot be set aside or altered upon proof of a mere error of judgment.

APPEAL from the Circuit Court for *Rock* County.

The facts will sufficiently appear from the opinion. *John Mullen*, one of the devisees named in the will of John Mullen, deceased, appealed from the judgment of the circuit court.

*William Smith*, for the appellant.

For the respondent there was a brief signed by *B. F. Dunwiddie*, attorney, and *B. Dunwiddie*, of counsel, and the cause was argued orally by *Mr. B. F. Dunwiddie*.

The following opinion was filed November 6, 1884:

ORTON, J. The only part of the will of John Mullen, deceased, pertinent to the question in this case is as follows: "And I further direct and will that all of said eighty acres

of land shall go to and belong to my son *John Mullen*, upon his paying to my sons *Thomas* and *Charles* an amount equal to one third interest therein, *based upon the appraised value thereof as made by the appraisers of my estate.*"

The appraisers of the estate were duly appointed by the county court, and they duly appraised the property, both real and personal, belonging to the estate, and at the same time appraised the said eighty acres of land so mentioned in the will at the sum of $3,600. The said *Charles Mullen* afterwards petitioned the county court for a new appraisement by other appraisers, to be appointed, on the grounds that the said *John Mullen* suggested and requested the appointment of said appraisers, and that they were all intimate friends and associates of his, and that said appraisers were grossly negligent or improperly influenced in their action, and appraised said land much below its real and true value.

The county court, on hearing, denied said petition, and the said *Charles* and *Thomas Mullen* appealed from the said judgment to the circuit court, and in that court a jury was impaneled and sworn to try the case, and evidence was taken, and the jury rendered a special verdict as follows: "Was the appraisal of the real estate of John Mullen, deceased, known as the east one half of the northwest quarter of section 12, town of Harmony, Rock county, Wisconsin, by the appraisers of his estate, at $3,600, a just and fair valuation of said real estate at the time when said appraisement was made, to wit, on October 11, 1882? *Answer.* No. What was the fair cash value of said land on October 11, 1882? *A.* Fifty-eight dollars per acre. Did the appraisers appointed by the county court, in making the appraisement of said eighty acres at $3,600, do so with a view of favoring *John Mullen*, one of the legatees under the will of John Mullen, deceased, and to enable him to obtain said eighty acres at less than its fair cash value, to the prejudice of his brothers *Charles Mullen* and *Thomas Mullen? A.* No.

Was the appraisement made by said appraisers fraudulently made in the interest of *John Mullen?*  *A.* No.  Was the appraisement of said eighty acres of land the honest judgment of said appraisers?  *A.* Yes.  Did said appraisers err in valuing said eighty acres through inexperience or ignorance of its fair value?  *A.* Yes."

The circuit court, having approved of said verdict, rendered judgment reversing the judgment of the county court denying said petition, with costs to the appellants, payable out of the estate, and *John Mullen* to pay his own costs, and ordered that the matter of the appeal be certified back to the county court, and said court be directed to cause a new appraisement of the real estate of John Mullen, deceased, to be made and returned into court.

On this statement of the case the real question is apparent, and its solution would seem to be plain and obvious.  The clause of the will relating to the appraisement of the eighty acres is peremptory and mandatory.  The one-third interest therein to be paid to *Charles* and *Thomas Mullen* by *John* was to be *based upon* the appraised value thereof, *as made by the appraisers of the estate.*  The appraisers of the estate made the appraisement, and this satisfied and complied with the direction in the will, and no other first appraisement could.  The appraisers were appointed as the general appraisers of the estate, and were not appointed specially to appraise this eighty acres.  They were the umpires or arbitrators, and together the tribunal selected and designated by the testator to make the appraisement of the eighty acres for the purposes in the will expressed.  The jury found that they did not make such appraisement with a view of *favoring John*, the legatee of the eighty acres, or *fraudulently in his interest*, but according to their *honest judgment*, and that they erred only through inexperience and ignorance, and that their appraisement was not the just and fair valuation of said eighty acres, but that the cash value thereof at the time

was $58 per acre. The effect of these findings is that the valuation made by the appraisers was lower than it should have been, in consequence of a mere error of judgment. It was perfectly honest, but too low.

To change the arbitrators or appraisers named in the will, or to set aside their appraisement, a want of mental capacity in the appraisers, or their bad faith, fraud, or mistake, or undue influence over them in making their appraisement or award, must be shown. 2 Story's Eq. Jur. 1456; *Baasen v. Baehr*, 7 Wis. 516. For any such good reason the county court, in such a case as this, even where the testator determined and designated the appraisers themselves, would be justified in setting aside the appraisement and in removing the appraisers. But most clearly not, when the only ground of impeachment of their award is the error of an honest judgment in making what is claimed too low a valuation. There is no certain way of correcting such an error. Other appraisers might err in too high a valuation, and still others in one too low, and so on, and certainty never be attained. The bare mention of the proposition is sufficient. The jury may have erred in making *their* valuation at $58 per acre. Who can certainly determine? Were they any more likely to be right than the appraisers? The testator did not select the jury, or the court, or the county court to make the appraisement. The appraisers of the estate must make it, and if honestly made it must stand, or the clear intention and specific direction of the will will not be carried out.

We see no good reason why the costs of both parties to this controversy shall not be paid out of the estate, and it is so directed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded, with direction to that court to affirm the judgment of the county court denying the petition.

A motion for a rehearing was denied January 13, 1885.