FORRISTAL vs. THE CITY OF MILWAUKEE.

*April 11 — May 31, 1883.*

CONTRACTS: CITY CHARTER. *(1) Determination by city officers of amounts earned on contracts. (2) Record of such determination. (3, 4) Contract construed: termination thereof by city.*

1. The charter of the city of Milwaukee makes the board of public works the arbiter to adjust and determine all questions as to the amounts earned under contracts with the city, and provides that such adjustment and determination shall be final and binding on the parties. *Held*, that such provision is valid, and that an award made upon a contract which by its terms is subject thereto, cannot be set aside except for fraud, misconduct, or mistake.
2. The record of such award need not set forth all the matters which were considered by the board in making it.
3. A contract for sprinkling streets provided that the work should be done subject to certain rules, one of which was that no allowance should be made for sprinkling street crossings, but that the intersections of the roadway should be paid for at the regular contract price per lineal foot. *Held*, that in estimating the number of lineal feet sprinkled, it was proper to omit for each crossing the full width of the sidewalk on the intersecting street.
4. Such contract further provided that the work should be done until a certain date unless sooner terminated by the board of public works. *Held*, that the board had power to terminate the contract for cause. Whether it could do so arbitrarily is not determined.

APPEAL from the County Court of *Milwaukee* County.

Action to recover the sum of $5,015.55, alleged to be due to the plaintiff upon a contract for sprinkling streets in the Seventh ward of the defendant city, from May 27 to November 15, 1881. The answer denies that the plaintiff per-

Forristal vs. The City of Milwaukee.

formed the contract according to its provisions, alleging, among other things, that by the terms of the contract he should have used six teams and sprinkling wagons in the work, and that, in fact, he used but five. The answer further alleges that the contract was, in accordance with its provisions, terminated by the board of public works on the 1st day of November, 1881, and that the plaintiff was duly notified thereof; also, that in pursuance of the contract and under the law in such case provided, the board of public works on the 1st of November, 1881, duly adjusted and determined the amount earned under the contract at the sum of $2,822.65 over and above the price of water furnished by the city to the plaintiff in accordance with the contract; that of said $2,822.65 the plaintiff had received the sum of $1,939.37; that city orders for the balance had been issued and ready for delivery to the plaintiff, and that he had notice thereof, before the commencement of the action.

The record of the determination by the board of public works of the amount earned under the contract was introduced in evidence by the defendant and was marked "Exhibit C." It was as follows:

Nov. 14.                              NIC. FORRISTAL, Nov. 1, 1881.
Final estimate in full for sprinkling in Seventh ward.
33,194,70–100 feet.
    208.50 Market Sqr.
    583.50 7th ward park.

| | | |
|---|---|---|
| 33,986.70 — feet at 2½ cts., 5 1–10 months.................... | | $4,333 30 |
| 1,732.67    "    "    "    "    4 1–10    "    .................... | | 190 59 |
| | | $4,523 89 |
| CONTRA. | | |
| Amount deducted for not having the required number of teams, 1–6 ........................ | $753 98 | |
| Less estimate No. 1............................. | 1,600 00 | |
| Less estimate No. 2 ........................... | 339 37 | |
| Amount due for water, 5 teams, 5 1–10 months at $40 ......................................... | 1,020 35 | $3,713 35 |
| | $3,713 35 | $810 54 |

Forristal vs. The City of Milwaukee.

| | |
|---|---:|
| C. H. Park bill............................................. | $32 61 |
| Police Station bill....................................... | 3 19 |
| City Hall bill............................................ | 14 63 |
| City Shops' bill......................................... | 9 57 |
| Fire Dept. bill........................................... | 3 19 |
| Seventh Ward School bill................................ | 9 56 |
| Total allowed ............................ ............... | $883 29 |

Other evidence will appear from the opinion. The court submitted a number of questions to the jury, in reply to some of which the jury found that the facts alleged in the answer were true. They also found, generally, for the defendant. A motion for a new trial was denied, and from a judgment entered on the verdict the plaintiff appealed.

*John A. Wall,* for the appellant.

*J. R. Brigham,* for the respondent, argued, among other things, that a contractor with a municipal corporation must recover according to the contract and not *quantum meruit. McSpedon v. New York,* 20 How. Pr., 395; *Cowen v. West Troy,* 43 Barb., 48; *Brady v. New York,* 16 How. Pr., 433; *Bonesteel v. New York,* 20 id., 238; *Smith v. Brady,* 17 N. Y., 179. The determination by the board of the amount earned is sufficient in form. The function of the record usually is to preserve the conclusion, not the process. Not all of the official acts of such a board need be recorded. Many of them must be performed on the streets and away from the office of the board, and are acts which in their nature are not susceptible of record. *Bank of U. S. v. Dandridge,* 12 Wheat., 64–75; *Amherst Bank v. Root,* 2 Met., 533; *Union Bank v. Ridgely,* 1 Har. & Gill, 412. The provision of law, contained also in the contract, making the decision of the board final, will be sustained. *Hudson v. McCartney,* 33 Wis., 331; *Tetz v. Butterfield,* 54 id., 242; *Smith v. Brady,* 17 N. Y., 176; *Butler v. Tucker,* 24 Wend., 447.

COLE, C. J. The charter of the defendant contains this provision: The board of public works "shall reserve in every

contract the right to determine finally all performance of such contract, or doing of the work specified therein; and the right, in case of the improper or imperfect performance thereof, to suspend such work at any time, or to order the entire reconstruction of the same if improperly done, or to relet the same to some other competent party; and also the right, in case such work shall not be prosecuted with such diligence and with such number of men as to insure its completion within the time limited by the contract, to suspend such work and relet the same to some other competent party, or employ men and secure material for the completion of the same, and charge the cost thereof to the contractor. And power is hereby given to the said board to adjust and determine all questions as to the amount earned under any contract, by the contractor or contractors, according to the true intent and meaning of the contract; *and such adjustment and determination by said board shall be final between the parties and binding upon them.*" Sec. 20, subch. 5, ch. 184, Laws of 1874. The charter further enacts that every contract with the city shall be made expressly subject to the powers given the board in the above section; and the sprinkling contract entered into by plaintiff contained the provision *ipsissimis verbis.* It will be observed that by the charter, and by the contract itself, the board of public works were made the arbiters to adjust and determine all questions as to the amount earned by a contractor under his contract; and such adjustment and determination were made final and binding upon the parties. If this provision of the charter and of the contract is sustained, it is evident there can be no recovery, because the evidence conclusively shows that the board did determine the amount which the plaintiff had earned under his contract, and the officers of the city had issued an order for the same.

The learned counsel for the plaintiff did not insist that the provision which made the board arbiters to determine the

amount earned under a contract with the city was invalid as being contrary to public policy, or because it was in violation of any sound legal principle. It was doubtless entirely competent for the legislature to vest such a power in the board, and the provision is a wholesome one in many respects. It tends to secure the prompt performance of contracts which may affect the convenience, good order, and welfare of the citizens, and will often tend to prevent expensive litigation. The fact that the members of the board are officers of the city constitutes no valid objection to the provision. Of course, contractors consent that the board shall determine the amount which they have earned, and shall decide other questions of law and fact arising upon their contracts with the city. But where the board acts in good faith, is guilty of no fraud or misconduct, and makes no mistake, there is no reason why its determination and award should not bind the parties as in ordinary cases of arbitration. The parties expressly agree to submit matters of difference to that tribunal for decision, and, having done so, there is no hardship in holding them bound by the result. For, as observed by the counsel for the city, there is no more objection to a law requiring the board, whose duty it is to superintend the work, to act as arbiters in matters arising under a city contract, than there is to allowing an owner of a building, or a railroad corporation, to stipulate that his architect, or its engineer, shall conclusively decide disputes with contractors arising upon contracts. In this last class of cases the award of the umpire chosen by the parties to decide the matters of difference, when fairly made, has been held binding. *Hudson v. McCartney*, 33 Wis., 331; *Tetz v. Butterfield*, 54 Wis., 242; *Smith v. Brady*, 17 N. Y., 173; *Boston Water Power Co. v. Gray*, 6 Met., 131; *Herrick v. Belknap's Estate*, 27 Vt., 673. In this case the legislature may have deemed it necessary to vest such an umpirage in the board, and as the plaintiff expressly agreed in his con-

tract to make the determination of the board as to the amount earned on his contract final, he must abide by it. He can no more set it aside, unless he offers something to impeach its correctness or good faith, than he could the award of an arbitrator by whose decision of the controversy he had agreed to abide.

But the plaintiff's counsel says it did not appear from the evidence offered on the trial that the board ever determined, in a proper way, the amount which the plaintiff had earned on his contract. This position is not sustained by the record. Exhibit C, offered .in evidence, showed that the board had made an. equitable adjustment of the amount due the plaintiff on his contract. It is true, this exhibit is not very formal, and does not set forth all matters which Blodgett and Casgrain say the board considered in making its award or decision. But it clearly shows that the board made an equitable adjustment of what was due the plaintiff on his contract, in view of the fact that he failed to perform in every particular. The above witnesses, who were members of the board in 1881, clearly explain just how that body reached the conclusion it did in making its final estimate or allowance. The record itself which was made does not show all these matters, but it is sufficiently full to answer the requirements of the law. It was suggested on the argument, by plaintiff's counsel, that the board only had the power to adjust and determine all questions as to the amount earned under a contract where the contract was terminated and the work was relet to other contractors. But this construction of the provision is clearly wrong. The language used gives the board power to adjust, etc., all questions under any contract with the city. The words used are comprehensive, and vest the power in the board to adjust in case of all contracts. It was further said that the trial court erred in allowing, against objection, oral testimony of the proceedings of the board. But, as we understand the bill of exceptions, the records of

the board were in fact introduced in evidence, and were used and referred to by the witnesses in their testimony relative to the action of the board.

The contract stated that the work was to be done according to the rules and specifications of the board on file in the office of said board. These specifications provided that no allowance would be made for sprinkling street cross-walks. The intersections of the roadway were to be paid for at the regular contract price per lineal foot. In estimating the lineal feet sprinkled, the board omitted fifteen feet for every sidewalk crossing, allowing nothing for street cross-walks, but only for roadway intersections. This was because the sidewalks on each side of the street are fifteen feet wide. Mr. Blodgett explained to bidders that the object of this rule of measurement was to have the sidewalk spaces between the curb line and the lot line free from water; therefore only the intersections of the streets proper between the curbs would be estimated. The county court charged that this method adopted by the board of estimating what was included in the street crossings, with regard to lineal feet which the plaintiff was required to sprinkle, was correct. This charge was excepted to by plaintiff's counsel, but we think it was in accordance with the terms of the contract.

The contract required the sprinkling to be done from the 27th day of May, 1881, to the 15th day of November following, unless the contract should be "*sooner terminated by order of the board.*" The board did in fact terminate the contract on and from the 31st of October, and gave the plaintiff due notice thereof. The county court held in respect to this that the board had the right to terminate the contract for good and sufficient reasons. This charge is objected to; but it seems to us plain that the court was correct in holding that the board had the right to terminate the contract for cause under the reserved clause. Whether the board could do so arbitrarily without cause is a question which

we need not consider, because the court held that it could not. The case of *Niagara Fire Ins. Co. v. Whittaker*, 21 Wis., 330, relied on by plaintiff's counsel to show that the view of the county judge was erroneous, is not in point. There the insurance company did not reserve to itself the right to terminate the contract, as the contract under which the board acted did in this case. Therefore there was no error in the charge that if the board terminated the contract in the exercise of a sound discretion, and for a substantial reason, the plaintiff could recover nothing after it was terminated.

Nor did the court err in ruling that if the board determined the amount which the plaintiff had earned on his contract, and this amount was allowed him, and ready to be paid in city orders previous to the commencement of the suit, the plaintiff was not entitled to recover. The contract was payable in city orders, and orders for the proper amount, it appeared, had been issued and were ready for delivery.

Other exceptions were taken on the trial, and are relied on here for a reversal of the judgment. We do not deem it necessary to notice them *seriatim*. The view which we have taken of the power of the board, under the charter, to decide all questions as to the proper performance and to determine the amount earned by the plaintiff on his contract, renders many of these questions quite immaterial. The court undoubtedly erred in submitting several questions to the jury after it appeared that the board had made its determination of the amount justly earned by the plaintiff, which, both by the charter and the contract, was to be final as between the parties. But this was not an error of which the plaintiff can complain.

*By the Court.*— The judgment of the county court is affirmed.