Davis and another, Respondents, vs. La Crosse Hospital Association, Appellant.

*March 26—April 19, 1904.*

*Building contract: Waiver of lien: Payment for "extras:" Condition precedent: Waiver of prior valuation: Allowance of additional time: Architect's certificate: Liquidated damages.*

1. The right to a mechanic's lien may be waived by an agreement not to exercise it; but if the contract is ambiguous on the question the doubt will be resolved against the waiver.

2. A contract providing for delivery of the completed building to the owner "free from all claims, liens, and charges," and for final payment when the architect should be satisfied that the building was in fact free from liens, is *held* to refer only to liens of those claiming through or under the contractor, and not to be a waiver of his own right to a lien.

3. A stipulation in a building contract to the effect that, unless the value of additions to or deductions from the contract work shall first have been agreed upon and indorsed upon the contract, the difference in value, whether in favor of the contractor or of the owner, shall be deemed forfeited, should not be held to have been waived—at least in respect to trifling changes—by the mere failure to agree upon and indorse their value. It should be held waived in such case only upon clear and satisfactory evidence showing that to have been the intention of the parties or showing an estoppel *in pais.*

4. A contract provided in effect that no additional time should be allowed for the completion of the building on account of delays arising from certain specified causes unless at the time of such delay written notice should be given to the architect and he should then make the allowance. *Held*, that where no notice of claim for additional time was made under that provision, the architect had no right to consider such delays in determining whether or not the work could reasonably have been completed at the stipulated time.

5. A contract for the building of a hospital for $24,660 provided that the contractor should pay $20 for each day the work remained uncompleted after a time fixed. The character of the building being such that the actual damages resulting from such a delay, or the rental value of the building, would be very difficult of ascertainment, and the amount stipulated not being largely, if at all, in excess of a fair interest on the investment, it is *held* that the provision was one for liquidated damages and not for a penalty.

6. The delay for which, in such a case, the stipulated sum per day is payable refers to working days only.

Appeal from a judgment of the circuit court for La Crosse county: J. J. Fruit, Circuit Judge. *Reversed.*

Action to enforce a mechanic's and materialman's lien for a balance of $660 alleged to be due on contract, and for the value of some extra work done and material furnished. Facts were alleged entitling plaintiffs to the relief prayed for. The answer admitted that there was an unpaid balance of $660, but denied all the allegations upon which the liability for extra work was predicated, and alleged that the contract expressly provided that no addition to the work therein specified should be made a liability against the proprietor without the additional amount to be paid therefor being first determined in a particular manner described and indorsed in writing by both parties upon the contract; that without such determination and indorsement the difference in the expense, whether in favor of the proprietor or the builder, should be forfeited. It was further alleged that there was no such determination and indorsement as to any of the alleged extra

work. Defendant further counterclaimed for damages at a stipulated rate, making $2,640. The contract provided for the completion and delivery of the building to the proprietor, free of all liens, claims, and charges, by November 1, 1900; or the payment as liquidated damages of $20 per day for each day such completion and delivery should be delayed, upon condition, however, of the architect, G. L. Harvey, certifying that such completion could have been reasonably accomplished by the time named. It was agreed time should be deemed the essence of the contract. The architect certified in writing that the building could reasonably have been completed within the time stipulated in the contract, whereas it was not completed and delivered to defendant until April 25, 1901.

To that, reply was made denying the material allegations and alleging that if the architect made any certificate under the provisions of the contract referred to, to the effect alleged, it was made dishonestly through collusion with defendant. Reply was further made that the provisions of the contract relied on by the defendant were waived by the parties.

The contract price for the building was $24,660. The contract contained the provisions set forth in the defendant's answer, and the architect made the certificate therein alleged. The evidence was to the effect that the building was not completed till long after the stipulated time, and not earlier than April 1, 1901; that some work was done and material furnished not strictly required by the contract, and that no attention was paid to the provision of the contract in that regard. There was conflicting evidence in respect to the question of whether the plaintiffs were delayed in the performance of their work by conditions for which defendant was responsible; and that the architect, in making his certificate, did not take into consideration such delays. The contract contained this provision on that subject, in close connection

with one in regard to the liability of the builder to pay $20 per day as liquidated damages upon the contingencies before mentioned:

"If said work shall be delayed by frost or inclement weather or by general strikes of workmen causing delay to said party of the second part, or in case alterations or additions requiring additional time shall have been executed as aforesaid, or in case delay be caused to said party of the second part by other contractors upon said building, provided written notice is given to such architect at the time of such delay, an allowance for the same as determined by said architect shall be added to the time stipulated for the completion of said work."

No claim for additional time to complete the building was made under that provision. The court found for the plaintiffs upon all the issues except as to the claim for extra work in excess of $38.30. It was held that the architect, in making the certificate, by reason of his failure to consider the causes which delayed plaintiffs and interfered with their completion of the building by the time stipulated in the contract, acted arbitrarily and fraudulently, and that therefore such certificate was not binding upon the plaintiffs. Judgment was ordered in their favor according to the prayer of the complaint, except that the amount allowed for extras was limited to $38.30. Judgment was so rendered.

For the appellant there was a brief by *McConnell & Schweizer,* and oral argument by *C. H. Schweizer.*

For the respondents there was a brief by *Miller & Wolfe,* and oral argument by *W. F. Wolfe.*

MARSHALL, J. Whether the judgment should be affirmed or not depends upon the solution of three plain propositions: First, did the stipulation in the contract, to deliver the building free of all claims, liens, and charges, preclude respondents from filing a lien to enforce payment of any sum they might be compelled to recover of appellant by action? Sec-

ond, was the court warranted in holding that the provision of the contract as to forfeiture of claims for extra work was waived? Third, was the court warranted in ignoring the architect's certificate as regards whether the building could reasonably have been completed by the time stipulated in the contract? We will consider each of such propositions.

1. A builder may waive his right to the lien remedy given by statute, and does so by agreeing not to exercise such right. *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490. Such an agreement may be made by an express stipulation not to file a lien (*Fidelity Mut. L. Asso. v. Jackson,* 163 Pa. St. 208, 29 Atl. 883; *Schroeder v. Galland,* 134 Pa. St. 277, 19 Atl. 632; *Benedict v. Hood,* 134 Pa. St. 289, 19 Atl. 635; *Ballman v. Heron,* 160 Pa. St. 377, 28 Atl. 914); or by agreement in form that no lien shall be filed on the building under the lien laws of the state (*Seeman v. Biemann, supra*); or by an agreement that the builder "will not suffer or permit a lien to be filed" (*Scheid v. Rapp,* 121 Pa. St. 593, 15 Atl. 652); or by the giving of a bond by the builder that no lien shall be filed on the building (*Pinning v. Skipper,* 71 Md. 347, 18 Atl. 659); or in any other way clearly showing such to be the intention of the parties. But where the terms of a contract are ambiguous on the question, the doubt should be resolved against the waiver, since it should be presumed, in the absence of clear evidence to the contrary, that one has not disabled himself from the use of so valuable a privilege as that given by statute for the enforcement of a builder's rights in the circumstances involved in such a case as this. The stipulation here was for the delivery of the building, "free from all claims, liens, and charges" on or before November 1, 1900, etc. Payment of the contract price was agreed to be on monthly estimates made by the architect, less fifteen per cent., which reserved amount it was stipulated should be paid when the contract was completed and the architect satisfied that the building was in fact free from all

liens. Now it seems quite plain that the liens referred to in the last clause mentioned are the same as those referred to in the other clause. If so, it is obvious that the claims and liens in question are of a special class. It would be absurd to provide that a contractor shall be paid the amount due him for constructing a building upon satisfactory proof being made that he has no lien; while a provision that payment will be made upon such proof being made as regards those claiming under him would be reasonable, and is the common form of · agreement. Our construction of the language of the contract is that it called for a delivery of the building free from any lien or claim for a lien through or under the builder. It could not reasonably have had reference to any lien filed by the builder, because the contract contemplated the probable lapse of time for making the last payment, after the completion of the building,—time sufficient to enable the architect to determine whether there were any liens, claims, or charges thereon. It was contemplated that there would be nothing due him till the happening of conditions precedent, which might not occur till after the day of delivery. Such was the case. The building was delivered before respondents had any cause of action against appellant. There was no lien on file at the time of the delivery, nor for some time thereafter, nor was there, so far as appears, any claim that might ripen into a lien, except that of respondents. It is considered that it was not intended by the parties to the contract that respondents should· not have the statutory lien remedy to enable them to collect any sum that might be in the end due them, and payment of which they might be compelled to enforce by action.

2. In support of the court's ruling that the provision of the contract in regard to forfeiting claims for additions to the contract work and material, was waived, counsel for respondents suggest that such a provision can be waived, and cite *Bannister v. Patty's Ex'rs,* 35 Wis. 215. True, such a

provision can be waived; but that does not warrant holding, whenever a thing is done under a contract for which, by the terms thereof, additional compensation is dependent upon a certain specified condition being complied with, that such condition was waived as a matter of course because no notice was taken thereof. Such a method of dealing with a contract would result in sanctioning the very looseness, and suggest and give countenance to the very class of controversies, such provisions are designed to prevent. There would be, then, little or no use of making a written contract at all, containing such guards, because if one were made the court, upon a controversy thereunder occurring, would look to what was in fact done and test the contract by that instead of testing what was done by the contract in determining the legal rights of the parties. There is, at times, rather too much of a tendency to do that, the court acting as a mere arbitrator instead of judicially giving to each party his legal rights. Parties must be left to make their own contracts, and without any protection from improvident provisions embodied therein, in the absence of clear evidence of a modification or some relievable fraud or mistake. A contract once made can be subsequently varied by the parties thereto, and by parol, but a mere breach of contract, or failure to comply with the provisions therein upon which certain advantages are made to depend, should not be deemed a waiver of those parts of the agreement which would otherwise condemn the party guilty of the breach to damages, or condemn the party failing to perform such agreement to lose the advantages just as the contract provides. In the circumstances before us, a provision should not be deemed waived in the absence of clear and satisfactory evidence showing such to have been the intention of the parties, or showing an estoppel *in pais*. Certainly, the mere failure to do the very thing which the parties stipulated should work a forfeiture, is not sufficient. Otherwise the rule would be that, instead of a provision in a contract work-

ing a forfeiture under the circumstances therein prescribed, the doing of the thing which was stipulated should work a forfeiture would always be held not to do so, but to waive the conditions of the contract in that regard. If, under a contract containing such a provision, a builder were requested to and did perform extra work of such magnitude that the idea that it was intended he should have no additional pay therefor would appear highly·unreasonable or absurd, a court might, nothing appearing to the contrary, conclude that there was a mutual intention to waive such provision. But such is not the case here. The written contract on its face contemplated that additions and deductions from the contract work might occur from time to time during the progress of the building. An express stipulation on the subject was inserted therein, with the one to the effect that, unless the value of additions or deductions should be determined and the advantage as to cost of the building for the one side or the other be noted on the contract, the same should be deemed forfeited. The agreement was eminently fair. If the price of the building was lessened by the change, the understanding was just as express that no advantage to the proprietor should accrue thereby in the absence of the agreed evidence indorsed upon the contract, as was the understanding with reference to loss of advantages by the builder. The provision in that regard was a very wise one, and should be viewed favorably by the court rather than set aside upon a trifling pretext. *Abbott v. Gatch,* 13 Md. 314. The idea of the parties was, plainly, that trifling changes might occur in the design of the building during the progress of its erection, and that the proprietor should be free to order them made without thought of how the same would affect the cost of the structure, unless a claim should be made therefor seasonably, the effect upon the contract price of the building be determined in the manner agreed upon, and the fact in that regard be indorsed thereon. The changes for which the $38.30 were allowed by the court were clearly within that provision.

Our conclusion is that the evidence comes far short of showing any intention to waive the provision that additional compensation for additional expense in constructing the building, caused by variances in the character of the structure from the specifications of the contract, should depend upon the matter being treated as therein indicated. Such treatment was made a condition precedent to the recovery for extras, and should be enforced the same as any such condition. *O'Keefe v. St. Francis's Church,* 59 Conn. 551, 22 Atl. 325; *Bartlett v. Stanchfield,* 148 Mass. 394, 19 N. E. 549.

3. Much of what has been said on the second proposition applies to the third. The court found that the architect acted arbitrarily to the extent of perpetrating a fraud on respondents, because he did not consider the conditions which caused the delay in the completion of the building, in making the certificate. He followed, however, the terms of the contract. That in effect expressly provided that no claims for extra time to complete the structure should be allowed on account of any of the hindrances which respondents insisted in fact delayed them, unless at the time of such hindrances written notice should be given to the architect and he should then pass upon the same, making an allowance for additional time on account thereof. No such notice was given or allowance made. Hence the architect, when he came to make the certificate, had no right to consider any such interference. The learned court disregarded the certificate because he complied with the contract in making it. If he had not done so, it would have been the duty of the court to disregard the certificate in favor of the appellant. We are unable to see in the evidence or in the reasons assigned by counsel for respondents, any justification for holding that the certificate was other than just what the contract contemplated should be made under the circumstances.

A provision of the kind under consideration must not be set aside because it seems harsh. Parties have a perfect right to make harsh provisions in their contracts if they see fit.

If they do, courts should not sit to revise them.  Their duty is to enforce contracts as they find them, regardless of consequences, when no invalidity is involved nor public policy violated, and no mutual mistake or fraud, nor clear evidence of modification.

Stipulations of the kind under consideration are uniformly enforced, there being no clear evidence of fraud or wrong equivalent thereto, or mutual mistake in the execution, or clear case of waiver.  *Baasen v. Baehr,* 7 Wis. 516; *Hudson v. McCartney,* 33 Wis. 331; *Wendt v. Vogel,* 87 Wis. 462, 58 N. W. 764; *Forster L. Co. v. Atkinson,* 94 Wis. 578, 69 N. W. 347; *Boden v. Maher,* 95 Wis. 65, 69 N. W. 980; *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis. 359, 79 N. W. 564; *Coorsen v. Ziehl,* 103 Wis. 381, 79 N. W. 562; *Ashland L., S. & C. Co. v. Shores,* 105 Wis. 122, 81 N. W. 136.

From the foregoing it will be seen that the trial court should have determined the damages sustained by the respondents' breach of contract in not finishing the building on time.  The claims for damages were: .first, the stipulated damages of $20 per day; second, expenses of a superintendent during the period of delay; third, damages caused by injury to the building itself by reason of work being done during the winter season which was intended to be done in warm weather.  It is considered that all elements of damages suggested, which would be recoverable under any circumstances, fall within those intended to be compensated for by the stipulated damages of $20 per day, if the contract provision in that regard is to be taken literally, and we think it is.

Of course, whether a provision in a contract for liquidated damages is to be enforced literally is to be determined by the intention of the parties to be read out of the language used by them, in the light of all the circumstances and some arbitrary judicial rules well established for that purpose.  Such rules are peculiar.  They are not very philosophical, nor con-. sistent with legal principles generally, but nevertheless are

so well established that they are presumed to form a part of every contract to which they are applicable, because the parties thereto are presumed to have had them in contemplation in making their agreement. The following cases discuss the rules at considerable length: *Seeman v. Biemann,* 108 Wis. 365, 84 N. W. 490; *J. G. Wagner Co. v. Cawker,* 112 Wis. 532, 88 N. W. 599. The peculiarity mentioned is well illustrated by the text in 3 Parsons, Contracts, at page 156, often quoted without substantial variance from the original, as was done in *Berrinkott v. Traphagen,* 39 Wis. 219, and *Seeman v. Biemann,* 108 Wis. 374, 84 N. W. 493:

"Parties may contract for stipulated damages at their pleasure, but such damages only as the law says are liquidated according to the artificial rules which have been adopted to justify courts in saying what the parties intended are in fact to be regarded as such damages."

One of the most familiar tests for determining whether it should be held, in such a contract as the one in question, that the parties intended their language to be taken literally, is whether the actual damages, reasonably to be anticipated from the standpoint of the parties at the inception of their contract as the probable result of a breach of it, bear some fair relation to the amount of the damages stipulated for. If the latter is so large that the former cannot reasonably be said to have formed any fair basis for it, then the inclination is to hold that the stipulated damages, so called, are but a penalty, and that the actual damages suffered are the only recoverable loss. Another of the most common tests is whether the character of the property is such as to render the actual damages caused by a breach of the contract very difficult if not impossible of ascertainment with any reasonable degree of certainty. Both of those tests indicate clearly in this case that the parties intended the language fixing the damages for delay at $20 per day to be enforced literally. The character of the building was such that it was very diffi-

cult for any one to say with any reasonable degree of definiteness what the rental value would be. Again, the damages stipulated for were not largely, if at all, in excess of a fair interest upon the investment in the building, when taxes, insurance, and repairs were taken into consideration. Other tests that might be mentioned in determining the question under consideration point the same way as those above suggested.

From the foregoing we cannot see any escape from the conclusion that appellant is entitled to a judgment for the stipulated damages of $20 per day for ninety-two days, less $660 unpaid upon the contract, making $1,180, and is entitled to interest thereon from February 12, 1901. If that seems harsh, the parties suffering the burden have but to reflect that it is but the result of enforcing the contract just as they made it, and the law which acts upon them with seeming harshness one day is the same law they may invoke in their favor upon some other occasion. Our construction of the contract is that the delay for which respondents bound themselves to pay damages at $20 per day refers to working days only. The period of delay was not found by the court. We do not feel warranted in finding that it amounted to more than ninety-two days.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to render judgment in favor of the defendant for $1,180, with interest thereon from February 12, 1901, and with costs as the same may be taxed and allowed according to law.