[No. 2182]

## J. E. GASTON, RESPONDENT, v. MARY AVANSINO, AS ADMINISTRATRIX OF THE ESTATE OF LOUIS AVANSINO, DECEASED, MARY AVANSINO, LOUIS AVANSINO, AND LENA AVANSINO, APPELLANTS.

[154 Pac. 85]

1. EVIDENCE—"NEGATIVE TESTIMONY."

The testimony of one claiming a mechanic's lien for work performed upon a building that he worked on the building, that at the time he looked for a notice signed by the owner that he would not be responsible for the repairs, and that there was no such notice at any time while he was doing the work is not negative testimony such as may be disregarded in the face of positive testimony that the notice was posted.

2. APPEAL AND ERROR—SCOPE OF REVIEW—CONFLICTING TESTIMONY.

Where the testimony of the plaintiff on the trial of an action to foreclose a mechanic's lien was positive that a notice disclaiming liability for the work done was not posted, and the defendant's testimony was equally positive that it was posted, there was such a conflict in the testimony that the determination of the lower court would not be disturbed.

3. MECHANICS' LIENS—TIME FOR FILING.

Where the original contract for the alteration and repair of a building under which a mechanic's lien was sought to be foreclosed contemplated only certain repairs, but there was no time limit during which they should be done, and other and additional repairs were made at various times, continuing for a period of several months, a notice of mechanic's lien filed within six months of the completion of the last work of repair was filed in time; the contract being a continuing contract, although during the time there were several times at which the plaintiff was not actively engaged in the repairs.

4. MECHANICS' LIENS—TIME FOR FILING—FRAUD.

In such case evidence *held* not to show fraudulent intent in making the final repairs so as to permit filing of lien after it should have expired.

5. MECHANICS' LIENS—TIME FOR FILING—FRAUD.

Evidence *held* insufficient to show that the contract was performed in a certain month, so as to make invalid a notice filed more than six months thereafter.

6. MECHANICS' LIENS—WAIVER—EVIDENCE—SUFFICIENCY.

Under the rule that one holding a lien will not be held to have waived it by an ambiguous agreement, evidence *held* insufficient to show a waiver of a mechanic's lien.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Action by J. E. Gaston against Mary Avansino, as Administratrix of Estate of Louis Avansino, Deceased, and others. From the judgment and order denying a motion for a new trial, defendants appeal. **Affirmed**.

*Mack & Green*, for Appellant:

The court erred in its finding of fact that defendant did not post lien notices as required by section 2221, Revised Laws. The testimony of plaintiff on this point was merely negative. (*Ophir M. Co.* v. *Carpenter*, 4 Nev. 534; *Dalton* v. *Dalton*, 14 Nev. 419; *Pinschower* v. *Hanks*, 18 Nev. 99.)

The court erred in finding that the lien had been filed within the time required by law. On this point there is no conflict of evidence. (*Hunter* v. *Truckee Lodge*, 14 Nev. 34; *Lonkey* v. *Wells*, 16 Nev. 271.)

An agreement between the owner and the person furnishing labor or material, that the latter will not claim or file a lien, is a waiver of the right to a lien. (*Bowen* v.

*Aubrey,* 22 Cal. 572; *Insenman* v. *Fugate,* 36 Mo. App. 169; *Matthews* v. *Young,* 40 N. Y. Supp. 27; *Iron Co.* v. *Murray,* 38 Ohio St. 327; *Hughes* v. *Lansing,* 75 Am. St. Rep. 578; *Davis* v. *La Crosse H. Assn.,* 99 N. E. 352.)

*Dixon & Miller,* for Respondent:

An examination of the record will disclose that this appeal can be fairly said to be a frivolous one, without any substantial error or ground being set up, either in the record or in appellant's brief.     There was a substantial conflict in the evidence, but the lower court found that defendant had not posted the statutory notice, and that plaintiff had filed his lien within the time required by law.     The transcript shows conclusively admissions by appellant that he had notice of the work done under the contract, set up in the claim of lien, within two days after the contract had been entered into. (*Gould* v. *Wise,* 18 Nev. 253; *Rosina* v. *Trowbridge,* 20 Nev. 106; *Tonopah L. Co.* v. *Nevada A. Co.,* 30 Nev. 445.)

By the Court, MCCARRAN, J.:

This was an action in foreclosure of a mechanic's lien. In the court below judgment was rendered in favor of the lienholder, respondent herein.     From the judgment and from an order denying a motion for a new trial, appeal is taken to this court.     The labor was performed and the material furnished by respondent at the instance and request of the lessee of the premises of Louis Avansino, deceased.     It is admitted that the work was done and the material furnished in bringing about certain alterations and changes in the premises, and was within the knowledge and with the consent of Louis Avansino. Louis Avansino having died since the judgment was rendered in the lower court, Mary Avansino, administratrix of the estate of Louis Avansino, was substituted as party defendant and appellant herein.

**1, 2.** It is the contention of appellant that the court erred in finding the fact that the defendant, appellant herein, did not give notice by posting in writing on the premises in some conspicuous place, stating that he, the

defendant, would not be responsible for any material furnished or labor done in the alteration and repair of the building.

Section 2221 of the Revised Laws, 1912, provides:

"Every building or other improvement mentioned in section 1 of this act, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situate thereon."

It was the contention of appellant in the court below that due and sufficient notice was given, by posting in a conspicuous place in the building a certain notice testified to by Louis Avansino, Jr. Louis Avansino, Jr., testified that about the 10th or 11th day of November, 1912, he wrote out a notice, signed it with his father's name, and posted the same in a conspicuous place in the building.

The testimony of the witness Kirby Unsworth is to the effect that on one occasion he saw the witness Louis Avansino, Jr., with a paper in his hand; that on the paper was what he would term a rough notice in handwriting; that he saw Louis Avansino, Jr., go into Kane's Cafe, the premises in question, carrying this paper. The witness Unsworth, in attempting to fix the time at which his attention was drawn to the notice in the hand of Louis Avansino, Jr., said:

"Q. Can you recall to mind whether or not you accompanied the son from any place to that building for any purpose some time back? A. Last fall, during the noon

hour, I met one of the boys, Louis, near Conant's grocery store as I was going out of Conant's, and accompanied him down as far as Kane's Cafe."

The trial of this case took place in June, 1914; and, if the witness's testimony in this respect was correct, the time at which he saw the notice in the hands of Avansino was nearly a year subsequent to the commencement of the work.

The witness Louis Avansino, defendant in the court below, as well as the witness Maggilo, testified to having seen the notice posted on a swinging door, a conspicuous place in the premises.

It is the contention of appellant that this testimony was not contradicted, except by witnesses who testified that they did not see the notice; in other words, they contend that no positive testimony was given denying the notice. We think the view of appellant in this respect is untenable, inasmuch as the record discloses the following testimony elicited from the respondent, Gaston, a witness in his own behalf:

"Q. Now, Mr. Gaston, at the time you entered into this oral contract with Kane, Incorporated, for alteration repairs to which you have testified, was there any notice posted upon those premises anywhere to the effect that Mr. Avansino, the owner of the building, would not be responsible for work done thereon? A. No, sir; there was not.

"Q. Was there any such notice posted upon those premises at the time you commenced work on the 11th of November, 1912? A. No, sir.

"Q. Was there any such notice posted there at any time during the month of November, 1912? A. No, sir.

"Q. Was there any such notice posted upon those premises during the month of December, 1912? A. No, sir.

"Q. Was there any such notice posted upon those premises at any time during the month of January, 1913? A. No, sir.

"Q. Was there any such notice posted upon those premises anywhere during the month of February, 1913? A. No, sir.

"Q. Was there any such notice posted anywhere upon those premises during the month of March, 1913? A. No, sir.

"Q. Was there any such notice posted upon those premises anywhere during the month of April, 1913? A. No, sir."

The witness McDermott testified to having worked in the building as a plumber during the month of March, 1913; that he made some search for notice, and saw none at that time.

The witness Harry Kelly testified that he worked in the building during the month of November, 1912, and also in January, 1913; that he saw no notice.

The witness C. W. Farrington testified that he worked in the building as a carpenter during the month of November, 1912, and as late as May 23, 1913, and that he saw no notice.

The witness E. J. Brennan testified that he worked in the building during the months of November and December, 1912; that his work and employment took him all over the building; and that he saw no notice posted.

The witness Johnson testified that he worked in the building for several days during the month of November, 1912, and saw no notice.

The witness Otto Koehler testified that during the month of December, 1912, he worked in the building as a paper-hanger and painter, and saw no notice.

The testimony of several other witnesses was to the same effect.

Whatever might be said as to the negative nature of the testimony of the witnesses called in behalf of respondent in the court below, the testimony of the respondent himself was positive upon the question that no notice was posted. On this question, then, there was a substantial conflict of testimony; and, there being positive and substantial evidence produced by the respondent himself upon which the finding of the court on the question of fact as to the posting of the notice can be supported, the rule universally adopted by this court, and by nearly all other courts of last resort, is applicable here,

and the finding will not be disturbed. (*Tonopah Lumber Co.* v. *Nevada Amusement Co.*, 30 Nev. 445, 97 Pac. 636; *Turley* v. *Thomas*, 31 Nev. 181, 101 Pac. 568, 135 Am. St. Rep. 667.)

**3.** It is the contention of appellant that the trial court erred in finding that the lien was filed within the time required by law. They contend here, as they contended in the court below, that the work was completed in February, 1913, and that services performed thereafter by respondent were no part of the original contract, but were separate contracts for which separate liens should have been filed, and that the lien notice filed by respondent on August 9, 1913, was not filed within the statutory time. Indeed, from a standpoint of the evidence produced, as well as from a standpoint of the law applicable, this is the closest question presented in the case.

It was the contention of respondent in the court below, and testified to, that on the 9th of November, 1912, he entered into an oral contract with the lessee of the building, to wit, Kane, Incorporated, to furnish labor and material for the alteration, changing, and repair of the building for the convenience of Kane, Incorporated. The terms of the agreement, according to the testimony of respondent, were that respondent was to do the work and furnish the labor and material, and that Kane, Incorporated, was to pay respondent at the rate of $6 per day for his labor, $5 a day for carpenters whom he employed, $2.50 a day for carpenter helpers, $4 a day for brick-mason helpers, and $7 a day for brick masons. The testimony of respondent, Gaston, in this respect is as follows:

"Q. You say—— What was the alteration? Describe that work to be done under that agreement. A. Well, at that time the work that was outlined was rebuilding the dining-room, to take out the old kitchen out of the dining-room, and take the stairs out of the front and put them in again in the rear, or better than one-third or halfway in the building—they were running the upstairs there—put in a hall from Virginia Street to the dining-room,

and put in the toilets and other conveniences, and put in lunch counters, and put in a front on the building and other alterations, both upstairs and downstairs, and the cellar.

"Q. And also to supply the materials of that work, were you? A. Yes, sir.

"Q. And all labor? A. Yes, sir; that is, the carpenters' labor only.

"Q. The carpenter labor? A. Yes, sir; and the common labor, of course, and the brick masons and brick helpers—those.

"Q. How was that amount of money to be paid? A. Well, it was to be paid as the work progressed along; to receive payments, and the balance at the completion of the work.

"Q. When did you begin that work? A. On the 11th day of November, 1912.

"Q. And you got through, finished it, when? A. On the 21st day of June, 1913.

"Q. And did you perform all of that contract, all that you agreed? A. Yes, sir.

"Q. All of the work? A. Yes, sir.

"Q. Furnished the materials that you agreed to furnish? A. Yes, sir."

On cross-examination the respondent, Gaston, testified that the reason for delay in the completion of the work was to suit the convenience of Kane, Incorporated, who was conducting a saloon and restaurant business in the premises.

It appears from the record that the labor performed by the respondent in and about the premises and in the alteration and improvement of the building was commenced on or about the 11th of November, 1912, and that from time to time changes and alterations and improvements other than those contemplated in the original contract were suggested by the lessee of the building. There appear to have been times when no improvements or alterations were being made and when the respondent was not in or about the premises at all; at other times it

appears that he was sent for by the lessee and asked to make other changes or alterations or to supply other material; and the last item of service performed or material furnished appears to have been on June 21, 1913, when a screen door was furnished and hung in place by respondent. As we take it from the record before us, all of the work and material went to the common purpose, which common purpose was the object of all parties to the original contract, *i. e.*, the rearrangement and improvement of the premises to suit the business that was to be conducted by the lessee, Kane, Incorporated.

T. J. Kane, the original maker of the contract with respondent, in testifying as to the making of the contract and its general terms and nature, and especially referring to the last item of service performed, said:

"I had a talk when I called him to put in the screen door, and I thought possibly that he would balk at it, but he didn't. Every time I called him he came to me and done the work, knowing the circumstances; that I could not pay in full.

"Q. You called him to put in the screen doors like you called him to do the other work? A. I did; yes, sir."

It appears that by reason of the several items of service performed and the several items of material furnished in alteration of the building the sum of $1,176 accrued to the respondent under the contract. It further appears that from time to time small sums of money were paid by Kane, Incorporated, to the respondent in part payment of the services already performed; the total of these sums being approximately $636, leaving a balance due and unpaid of $540.

In our judgment, the case presented by the record is one of a continuing contract. While it is true that the materials furnished and the services performed were furnished and performed on several different occasions, yet they all went to the one object, namely, the alteration and improvement of the premises to fit the same for the business being carried on by the lessee. It may be true, as indicated by the record, that on one occasion or even on several occasions, the respondent, lien claimant,

was not working in or about the premises, and the work commenced up to that time may have been completed, but it would appear that at all times the lienholder was looked to by the lessee for the further carrying out of changes and alterations and improvements in the premises whenever such changes or alterations or improvements appeared necessary to the fulfilment of the original purpose; and it further appears that the lien claimant always responded to the request of the lessee for the making of changes or alterations or the furnishing of materials.

The establishment and recognition of mechanics' liens under such conditions has been approved by the courts in more instances than one. In the case of *Premier Steel Co.* v. *McElwaine-Richards Co.*, 144 Ind. 614, 43 N. E. 878, the Supreme Court of Indiana, in passing upon a case where under the contract the materials were to be supplied from time to time as needed in the making of repairs and improvements extending over a considerable number of months, said:

"If each order and delivery of materials during the progress of an improvement constituted a separate contract, and required a separate lien, it will be readily seen that, instead of providing a practical, simple, and efficient method of security to the laborer and materialman, as the statute certainly intends, a complication would arise, requiring many liens or the delivery of all materials at one time, or the performance of all labor by continuous and uninterrupted service."

In the case of *Smalley* v. *Gearing*, 121 Mich. 190, 79 N. W. 1114, 80 N. W. 797, the Supreme Court of Michigan held that, where a contractor entered into an agreement with the materialman, whereby the latter was to furnish all materials of a certain kind for a building without any specific quantity being designated, and such material was delivered to the contractor from time to time, the time for filing a lien claim commenced to run on the last delivery. To the same effect is the case of *State Sash & Door Mfg. Co.* v. *Norwegian Danish E. L. A. Seminary*, 45 Minn. 254, 47 N. W. 796.

In matters of this kind it is not necessarily the contract,

but rather the furnishing and use of the materials and the putting of the same into the building, or the performing of the services upon the premises with the knowledge and consent of the owner of the premises, that constitutes the grounds for the lien. Whatever may have been said by other courts, or whatever may be said by other authorities upon the subject, this court has given valuable expression, in the light of which the question under consideration may be solved. The case of *Skyrme* v. *Occidental M. & M. Co.*, 8 Nev. 219, presented facts quite analogous to the case at bar. There the details of the testimony show that a number of contracts were taken by several of the lien claimants, some taking two or more contracts; others but one. These contracts were completed at specified dates. The miners who had taken these contracts, when their contracts were completed, either took a new contract or commenced work by the day in the same mine. The mine closed down without paying its employees, and liens were filed by the miners, which liens included the amounts due to each claimant for his entire labor under the contracts and for his labor by day's wage. The court, in passing upon the case, commented as follows:

"In the case at bar there was not in reality any new employment. The character of work was the same, viz, labor and work done on the mine. The amount to be paid varied with the peculiar character of the work at different times."

"It would be a harsh and unreasonable rule of construction," says Mr. Justice Hawley, in speaking for this court, "in these cases to hold that the statute required separate liens to be filed for each contract to enable the laborer to secure his wages. The injustice of such a rule would be greater to the mine owner than the laborer. It would destroy the credit necessary at times to have in order to continue operations on the mine, or add unnecessary costs and litigation by filing and foreclosing a multiplicity of liens.

The case of *Skyrme* v. *Occidental M. & M. Co.*, *supra*, was referred to approvingly in *Capron* v. *Strout*, 11 Nev.

304, and also in the case of *Ferro* v. *Bargo Mining and Milling Co.*, 37 Nev. 139, 140 Pac. 527. To the same effect is the reasoning in the following cases: *Salt Lake Hardware Co.* v. *Chainman Mining & Electric Co.* (C. C.) 137 Fed. 632; *Salt Lake City* v. *Smith*, 104 Fed. 457, 43 C. C. A. 637.

**4.** As we stated at the outset, the question last discussed is perhaps the closest one presented by this case, and is one which demands most careful scrutiny. It may be well to observe here that in the record before us it does not appear that the act of respondent, Gaston, in performing the last service, to wit, the hanging of the screen door on the premises, was done for the purpose or with the intent of extending the time within which he might file his lien for the other service performed or material furnished. There is nothing in the record to indicate, nor is it contended by appellant, that this service was performed for the sole purpose of permitting respondent to file his lien within the statutory time. There is nothing before us indicating fraud on the part of respondent. It may be well to observe here that, had such a condition been presented, the rule which we have asserted here could not operate in favor of respondent.

**5.** The witness T. J. Kane, called as a witness for the appellant, testified:

"The real work was done about the 1st of February; something like that."

From this statement the appellant contends that the trial court should have held that services performed or material furnished by respondent after the 1st of February were separate items of services, and hence the notice of lien was void, not having been filed within the time prescribed by statute. However, other statements found in the record made by the witness Kane, as well as the testimony of the respondent, Gaston, warrant us in the conclusion that there was substantial evidence produced upon which to support the finding of the court.

The record here discloses that the object sought to be accomplished was the alteration and improvement of the premises of appellant; that the services of respondent,

as well as the material furnished by him, were devoted to the accomplishment of the primary purpose. The services performed and the material furnished were performed and furnished from time to time to suit the convenience of the lessee of the building. Many of the changes and alterations made in the interior of the building by respondent and many items of material furnished by him were not taken into consideration or contemplated at the original making of the contract. This is not an unusual thing in bringing about alterations and changes in building interiors, where the building has in the past been used for some particular business, and a new business about to be installed therein requires different arrangements, many of which cannot be reasonably foreseen at first. Treating the whole as a continuing contract, the filing of the lien notice within the statutory time after the completion of the last services performed by respondent entitled the respondent to a lien for the whole, less the sum total of the amounts paid thereon. Our conclusion reached as to the second assignment of error discussed in appellant's brief would conclude the third assignment of error also.

**6.** It is the contention of appellant that the respondent, by agreement with Louis Avansino, the owner of the premises, specifically waived his right of lien. In this respect the testimony of Louis Avansino, Sr., the owner of the building, is to the effect that about the 11th or 12th of November, and after leasing the premises, he saw some men working in the old dining-room, of whom respondent was one, and that on going in there he told them, in effect, that he would not be responsible for any work done by them in the place. He further testified, in effect, that the respondent, Gaston, at that time said to him, in substance, that he had a contract; that he would get his money from Kane; that he would "make no trouble" for Avansino. The witness further stated, in substance, that Gaston at that time said to him that he would hold Kane responsible for the work and services performed. The testimony of the respondent, Gaston, in this respect

is to the effect that on the occasion he stated to Avansino that, if Kane was given a chance, he would pay for the labor and material. The witness, however, denied that he at any time stated to Avansino, or to any other person, that he would release Avansino or the premises from responsibility.

It is the contention of appellant that respondent by his acts and utterances made to and in the presence of Louis Avansino, the owner of the building, waived his right of lien as against the premises on which the labor was being performed and the material furnished. As to whether or not the respondent could by parol agreement waive his right under the statute to a lien for the services performed or the material furnished it will be unnecessary to determine in this case.

The statements of the respondent, Gaston, testified to by the witness Louis Avansino, Sr., upon which it is contended that the former waived his right of lien, are uncertain, even if viewed in the light most favorable to the contention of appellant. We may with propriety observe in passing that, as a general proposition of law, a release of a lien will not be inferred from doubtful expressions (Jones on Liens, vol. 2, p. 747); and, as stated by many authorities, where the terms of the agreement are ambiguous or uncertain on the question of release, the doubt should be resolved against the waiver. (*Davis v. La Crosse Hospital Association*, 121 Wis. 579, 99 N. W. 351, 1 Ann. Cas. 950.) Between the testimony of the respondent and that of appellant here there is a sharp and distinct conflict. The trial court had opportunity to observe the conduct and demeanor of the several witnesses upon the stand, and, after so observing and listening to the testimony given, found against the contention of appellant here. In this instance, not only is there a substantial conflict in the testimony, but there is substantial evidence upon which the finding of the court in this respect may be supported, for which reason we will not disturb the same. (*Anderson* v. *Feutsch*, 31 Nev. 501, 103 Pac. 1013, 105 Pac. 99.)

We deem it unnecessary, in view of our position here expressed, to touch upon other matters raised in appellant's brief.

The judgment of the lower court and the order appealed from should be affirmed.

It is so ordered.