ANDREWS LUMBER COMPANY, INC., Appellant, v. CHESKE and others, Respondents.*

*January 12—February 7, 1961.*

For the appellant there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by *Harley Brown* of Racine, for the Cheskes; *Foley, Capwell, Duersten & Foley* of Racine, for the Gottfredsens; and *La France, Thompson, Greenquist, Evans & Dye* of Racine, for the Currys; and oral argument by *Mr. Brown* and *Mr. Rex Capwell.*

---

* Motion for rehearing denied, with $25 costs, on April 4, 1961.

MARTIN, C. J. In September, 1956, John Joehnk and respondent Stephen S. Cheske entered into a written agreement whereby Joehnk was to build homes and Cheske was to obtain buyers for them by advertising, displaying model homes, arranging and servicing mortgage loans, and negotiating construction contracts for Joehnk and the buyer. Under that agreement Joehnk was to build four types of homes and Cheske's fees were stated to be $1,000 on the sale of one of the models, $800 on each of the other three.

Cheske testified to six or seven deals he had with Joehnk. In some Cheske alone or the partnership of Cheske and Gottfredsen took title to the property in order to finance construction; in others title was in the owner. In all the transactions any profit realized by Joehnk and Cheske depended on sale of the property; Cheske testified he received no profit other than his commissions.

The property involved in this case is at 3501 Green street, Racine, also known as lot 6, except the east six feet thereof, in block 4, Northbrook subdivision No. 2. This lot is at the corner of Green and North streets. Title to it was conveyed by Alvin and Leona Larsen to Stephen S. Cheske and Eugene R. Gottfredsen on January 31, 1957.

On March 28, 1957, appellant executed a lien waiver for materials for the improvement of lands, made or about to be made, at "Green St. & North St. lot 5. Northbrook No. 2 for Stephen Cheske & Gene Gottfredsen, owner, by Andrews Lumber, contractor, . . ." This was signed by "Andrews Lbr. Co., Inc., by A. Fennema, Sr.," the president of appellant company. On the same date Cheske and Gottfredsen executed a mortgage on lot 6 to Union Savings & Loan Association for $13,000.

John Joehnk had negotiated with the appellant for materials to build the house on lot 6. The records of the appellant show that the first delivery of materials to the jobsite

was on March 8, 1957, and the last on July 24, 1957. All appellant's invoices were made out to "J. M. J. Contracting," which was John Joehnk, and sent to the address of a model home where Joehnk maintained an office. On several occasions prior to March 8, 1957, appellant had sold lumber to Joehnk; their business relations were good and accounts had been paid promptly.

Appellant's president testified that in the spring of 1957, Joehnk advised him that financing would be handled by Cheske and Gottfredsen. In May, appellant discussed with Cheske the status of amounts owing it for materials furnished to Joehnk on various jobs. At that time there was over $6,000 owing on the Joehnk account, some for material furnished to houses at Crest View and for Tucker, the latter being a house on lot 5 which fronted on North street and was immediately to the east of lot 6.

Three payments to appellant on behalf of Joehnk were made through a trust account of Cheske and Gottfredsen designated "J. M. J. Account." No personal or partnership funds were commingled with the funds in this account.

Apparently sometime in May or June of 1957, when the house on lot 6 was about completed Joehnk "disappeared." The vice-president of appellant testified that on June 4, 1957, Jerry Meyer, known to him to be Joehnk's carpenter foreman, advised him he was now working for Cheske and Gottfredsen and ordered material to finish the lot 6 job. Meyer told him he could verify the order with Cheske but he took Meyer's word for it. Cheske testified the only material he authorized Meyer to order from the appellant was that delivered on July 24, 1957. Neither Cheske nor Gottfredsen ever personally ordered any materials from appellant.

On July 30, 1957, Joehnk conferred with the president of the appellant and its attorney. A claim for mechanic's lien was drawn in the sum of $30,000 on behalf of John Joehnk,

as principal contractor, for labor and materials furnished for the construction at lot 6 at the request of Cheske and Gottfredsen, owners of the property. This claim was filed July 31, 1957. Also on July 30th, Joehnk made an assignment to the appellant of $8,274.87 of the proceeds of the mechanic's lien to satisfy his indebtedness to the appellant. This assignment was not filed until November 14, 1957. On August 12, 1957, Joehnk executed and filed a release of his claim for lien. Also on August 12th, lot 6 was sold for $29,000 by Cheske and Gottfredsen to the Currys.

On August 27, 1957, John Joehnk was adjudicated bankrupt. Upon sale of the lot 6 premises, Cheske and Gottfredsen satisfied the mortgage, paid the taxes, paid the subcontractors who finished the house, took their commission of $1,200, and turned the remainder over to the trustee in bankruptcy for Joehnk.

On January 20, 1958, appellant executed and filed its lien claim against the property, alleging itself to be a principal contractor, and claiming that the sum of $5,287.31 is owing. We have detailed the facts. However, if there is evidence upon which the court could base its finding that the lien waiver dated March 28, 1957, by plaintiff to the defendants Cheske and Gottfredsen was effective, then plaintiff's appeal must fail and the judgment of the circuit court be affirmed.

It is our opinion that the appellant waived its right to a mechanic's lien. It raises the defense of ambiguity in the instrument, citing *Davis v. La Crosse Hospital Asso.* (1904), 121 Wis. 579, 583, 99 N. W. 351. The ambiguity there arose from the language in a contract providing for delivery of the completed building to the owner "free from all claims, liens, and charges." The question was whether that provision referred only to liens of those claiming through or under the contractor or to all liens, including the contractor's own. It was held:

". . . where the terms of a contract are ambiguous on the question, the doubt should be resolved against the waiver, since it should be presumed, in the absence of clear evidence to the contrary, that one has not disabled himself from the use of so valuable a privilege as that given by statute for the enforcement of a builder's rights . . ."

There is no question here whether a waiver was given. The only question is, to what property does it apply? The document reads:

"For Value Received, I—we hereby waive all of my—our rights to, and claims for a lien on the land hereinafter described, for work, materials, plans, and specifications for the improvement of said lands, made or about to be made, Green St. & North St. lot 5, Northbrook No. 2 for Stephen Cheske & Gene Gottfredsen, owner, by Andrews Lumber, contractor, said lands being situated in Racine county, state of Wisconsin, and described as follows.
"Dated 3/28/1957

"Andrews Lbr Co., Inc.,
"by A Fennema Sr.,
"Contractor."

The ambiguity arises from the description of the property as (1) Green street and North street, (2) lot 5, Northbrook No. 2, and (3) Stephen Cheske and Gene Gottfredsen, owners. The only lot on Green and North streets in this subdivision is lot 6, or 3501 Green street, and it was owned by Cheske and Gottfredsen. Lot 5, to the east thereof, is on North street and was owned by Tucker. Fennema testified that he knew lot 5 was owned by Tucker; that he filled in and signed the form of lien waiver, which stated the property referred to was owned by Cheske and Gottfredsen. Cheske testified the lien waiver was presented to him by Mr. Fennema; that the property at Green and North streets is 3501 Green street, denominated lot 6 of the subdivision; that he and Gottfredsen owned it; that he never had title to lot 5.

The record shows that on the same date that the waiver was signed and given to Cheske, March 28, 1957, Cheske and Gottfredsen gave a mortgage on lot 6 to the bank for $13,000. While Cheske did not say he needed the waiver in order to negotiate the loan—the elicitation of the testimony in this case leaves much to be desired—that inference is compelling.

We agree with the trial court that while the waiver states lot 5, there is no question but that it referred to lot 6. The appellant having waived its right to a lien on the property, the complaint was properly dismissed.

The trial court also held that appellant was not a "contractor" within the definition of sec. 289.01 (1) (a), Stats., and that it had not filed a lien as a materialman within the time limited by sec. 289.06. It is unnecessary to discuss this question in view of our decision as to the lien waiver.

*By the Court.*—Judgment affirmed.